## SAMUEL DAVIS vs. Inhabitants of BATH.

The *stat.* of 1838, *c.* 311, entitled " An additional act concerning the public money apportioned to the State of *Maine*," empowers the respective towns to distribute the amount of the money received under the act of 1837, *c.* 265, among the inhabitants of the town *per capita*, whatever appropriation or disposition thereof had been previously made by the town under the act of 1837.

IN this case the parties agreed on a statement of facts, and also agreed to waive any objections to the form of the process and mode of proceeding, and that judgment should be rendered according to the rights of the parties.

*Davis*, with his family, consisting of twelve persons including himself, were inhabitants of *Bath*, at the beginning of the year 1837, and long before, and have so remained since, and were enumerated as inhabitants of that town in the census taken that year. In *March*, 1837, the inhabitants of the town voted to receive their share of the *surplus revenue*, under the provisions of the *stat.* 1837, *c.* 265, and in the months of *April* and *June* following, did receive thereof their proportion, being $9046. The inhabitants of the town, at their annual meeting, *March* 27, 1837, voted to appropriate $4000 of this money for building a townhouse, $3000 for enlarging the almshouse, and appropriated sums towards a bridge and a ferry. These sums were expended according to the votes of the town, during the year 1837, excepting the sum of $1000, which was loaned out on security. At the annual meeting holden on the second day of *April*, 1838, the inhabitants of the town " voted to distribute *per capita* the surplus money belonging to the town." An article in the warrant for calling this meeting was, " to see how the town will dispose of the surplus money belonging to the town, according to an act of the legislature of 1838."

*Tallman*, for the plaintiff, argued in support of these propositions.

That as by the statute of 1837, *c.* 265, only the use of the money was given to the towns, it remained under their control and government, and they could at pleasure change the use to any legal purpose.

That the statute of 1838, *c.* 311, being accepted by the town of *Bath*, was an alteration of the original contract, and gave to that town the same money by a new grant, with new powers, which they became authorized to execute.

That the statute of 1838, conferred on the town, with its consent, authority and power to distribute among the inhabitants thereof a sum of money equal to their proportion of the surplus revenue ; and therefore the particular use to which the defendants had applied this money becomes immaterial.

That in equity and good conscience, as well as in law, the plaintiff is entitled to recover.

And that the defendants may be considered as having the money still in their possession, notwithstanding the first appropriation.

Davis v. Bath.

The counsel commented upon the case, *Hooper* v. *Emery*, 14 *Maine R.* 375, and contended, that there was nothing in that case inconsistent with the support of the present action.

*Randall* and *Groton*, for the defendants, contended, that the money was legally appropriated by the town for purposes authorized by the act of 1837, under which it was received, and actually paid out for the objects for which it was appropriated before the act of 1838 was passed. Under the first act, there could be no division among the inhabitants *per capita*. *Hooper* v. *Emery*, 14 *Maine R.* 375. The act of 1838 only adds an additional mode of appropriating any money not before expended, but remaining on hand in cash or in securities. The statute of 1838 is additional to that of 1837, and both acts are to be construed together. The act of 1838 gives no authority to the towns to raise money to distribute *per capita*, and where the money has been legally appropriated and expended under the first act, there is nothing to appropriate by distribution, *per capita*, under the second. By the act of 1837, the money belonged to the towns unless called for, and the release by the State of the right to call for it, cannot have any influence in determining the mode of appropriation. The towns have no power to raise money to distribute, and a vote to raise it for that purpose would be void, and any tax assessed under it illegal. If such be the law, a vote of the town to give the money to the plaintiff, would not enable him to sustain the suit. The vote of the town is only " to distribute, *per capita*, the money belonging to the town," and does not apply to the money expended in building a townhouse and a poorhouse. The money actually paid away, under the authority of the law, cannot be said to belong to the town.

The opinion of the Court was drawn up by

WESTON C. J. — The act of 1837, *c.* 265, provides, that the portion of the public money of the *United States*, which might be received of the Treasurer of the State, should be deposited with the several cities, towns and plantations, upon the terms and conditions therein prescribed. It was subject to be reclaimed, for which adequate provision was made ; but in the mean time the use of the money was to remain with the towns. It was not a special de-

posit for safe keeping merely, but it was a general deposit, impos-ing on the towns the obligation of returning an equal amount.

It was however deemed proper that the use of the money should be subject to public regulation. Accordingly the towns were em-powered, either to loan the money, on safe and ample security, or to appropriate it for the same purposes, for which they have a right to raise money by taxation. In either case, they remained liable to the State. It still existed, in the eye of the law, and was rep-resented by the security given by individuals, or by the obligation of the towns to replace the money in the treasury by taxation, from which they may have been relieved for a time, by the appropria-tion of that, which had been furnished by the public.

Under the act of 1837, the action of the towns was limited to the use of the money, and could not affect the principal. That had not become their property, or subject to their final disposition. Then came the act of 1838, c. 311, which relieved the several cities, towns and plantations from all obligation to refund the money, which had been deposited with them respectively. And this last act authorized them to make a definitive disposition of it. They were to distribute it *per capita*, or to appropriate it to any other purpose, for which it might be lawful for them to raise money by taxation. Under the first act, the towns received it as a deposit, under the second, they were entitled to retain it as a gratuity.

It was competent for the legislature, to determine in what man-ner their bounty should be enjoyed. It might be shared by all in common, or it might be appropriated to any lawful municipal pur-pose. In pursuance of this authority, the inhabitants of the town of *Bath*, at a legal meeting, duly called to act upon the subject matter, voted to distribute, *per capita*, the surplus money belong-ing to the town, under the act of 1838. The article itself, as well as the vote founded upon it, embraces the whole surplus money, received by the town. Upon this vote in our judgment, the town were bound to distribute the amount received, whatever disposition they had previously made of the use of the fund, to which alone their power previously extended. According to the agreement of the parties, by which all formal objections are waived, the plaintiff is to have judgment for his just proportion of the whole fund.